WK:DG
F. #2015R01973

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK LG CELLULAR PHONE LOCATED IN THE EASTERN DISTRICT OF NEW YORK | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE<br><br>Case No. 17 M 730 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH

I, KIERAN P. KEENAGHAN, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer with the Joint Robbery Task Force at the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for robberies. These investigations are conducted both in an undercover and overt capacity. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents and representatives of other law enforcement agencies; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another agent, officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Likewise, information resulting from surveillance sets forth either my personal observations or information provided directly or indirectly through other law enforcement officers who conducted such surveillance.

4. As set forth below, I submit that there is probable cause to believe that the device specified below contains evidence of criminal offenses, to wit: 18 U.S.C. § 1951(a) (Hobbs Act robbery and Hobbs Act robbery conspiracy) and 18 U.S.C. § 924(c) (Unlawful use of a firearm), collectively the "Subject Offenses."

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is ONE BLACK LG CELLULAR PHONE recovered on or about February 20, 2016 in the vicinity of 23-74 Brookhaven Avenue in Queens, New York (the "Device"). The Device is currently in the custody of ATF in the Eastern District of New York.

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

Overview of the Investigation

8. In approximately November 2015, the Joint Robbery Task Force identified a pattern of armed robberies of grocery stores in Brooklyn, Queens, and Staten Island on August 31, 2015, September 3, 2015, September 25, 2015, and October 12, 2015 (collectively, the "Robberies").

9. In the first three robberies, on August 31, 2015, September 3, 2015, and September 25, 2015, two men wearing dark clothing and masks entered a grocery store, each armed with a gun. The two men brandished their guns, demanded money and the employees' phones, robbed the stores and fled. In each of the first three robberies, one of the robbers ("Suspect 1") carried a silver handgun and the other robber ("Suspect 2") carried a red handgun. In each of the first three robberies, the robbers carried a blue string bag.

10. In the fourth robbery, on October 12, 2015, discussed further in paragraphs 21-23 below, two individuals entered the M&M Bagel Store located at 1609 Victory Boulevard in Staten Island and demanded money. Suspect 2 carried a red handgun. The suspects used a blue string bag during the robbery.

11. Suspect 1 has been identified as CHARLES GELZER. Suspect 2 has been identified as CLARENCE CLARK.

12. On December 16, 2015, a Grand Jury in the Eastern District of New York returned a five-count indictment charging GELZER with Hobbs Act robbery, Hobbs Act robbery conspiracy, and brandishing a firearm during the robberies and conspiracy, in violation of

18 U.S.C. §§ 1951 and 924(c). The indictment related to the August 31, 2015, September 3, 2015, and September 25, 2015 robberies discussed herein. United States v. Gelzer, 15-CR-638 (MKB).

13.  On May 23, 2016, a Grand Jury returned a six-count superseding indictment (the "Superseding Indictment") adding CLARK as a defendant in the five counts of the original indictment; charging CLARK with Hobbs Act robbery in connection with the M&M Bagel Store robbery described in paragraphs 21-23, and expanding the time-frame of the Hobbs Act robbery conspiracy. United States v. Gelzer, et al., 15-CR-638 (S-1) (MKB).

14.  On December 6, 2016, GELZER pled guilty to Counts Four (the September 25, 2015 robbery) and Six (unlawful use of a firearm) of the Superseding Indictment. On May 10, 2017, GELZER was sentenced to 96 months' imprisonment.

The August 31, 2015 Robbery of the AH&F Grocery Store

15.  On or about August 31, 2015, GELZER and CLARK entered the AH&F Grocery store located at 2811 Ocean Avenue in Brooklyn. GELZER wore a mask and a black vest with two silver buttons on the lapel ("the black vest"). CLARK wore a mask and dark clothing. GELZER carried a silver handgun and CLARK carried a red handgun. GELZER and CLARK went behind the store counter and displayed their guns. CLARK gave GELZER a blue string bag, which the two men filled with money and Newport cigarettes. The robbers also stole the store employee's iPhone.

16.  Within a week of the August 31, 2015 robbery, the iPhone that was stolen from the AH&F Grocery employee was registered for an iTunes account under the name "Shateekk Savage." On or about November 4, 2015, after he was arrested for possession of the iPhone

4

stolen during the August 31, 2015 robbery, CLARK stated, in sum and substance and in part, that he uses the name "Shateekk Savage" on Facebook.

17.     A profile picture on the Facebook page for "Shateekk Savage" depicted an individual with a blue string bag. Upon information and belief, I believe that the individual in the Facebook profile picture for "Shateekk Savage" is CLARK, and that the blue string bag in the picture is the same bag that was used in each of the Robberies described above.[1]

The September 3, 2015 Robbery of a Grocery Store at 180 Bay 35 Street

18.     On or about September 3, 2015, at approximately 10:30 p.m., GELZER and CLARK entered a grocery store located at 180 Bay 35 Street in Brooklyn. GELZER wore a red, white, and black mask depicting the flag of Trinidad and Tobago ("the Trinidadian flag mask") and the black vest.[2] CLARK wore a black mask and black shirt. GELZER carried a silver handgun and CLARK carried a red handgun. The robbers directed the store employee to lie on the floor and stole money from the cash register and the employee's iPhone. The robbers used a blue string bag during the robbery.

---

[1] On December 15, 2016, the Honorable Viktor V. Pohorelsky issued search warrants for two Facebook accounts associated with CLARK, including the "Shateekk Savage" account, and one Facebook account associated with GELZER. A photograph on the Facebook page for "Shateekk Savage" showed CLARK and GELZER, along with images of stacks of money and an arm making a muscle. The photograph showed CLARK holding an iPhone, which he appeared to use to take the photograph. A caption associated with the photograph included a "$" symbol appearing before the word "TEAM" ("[Money] TEAM"). GELZER was wearing the black vest in the photograph.

[2] On or about November 17, 2015, GELZER was arrested by the New York City Police Department ("NYPD") in connection with an armed robbery. At the time of his November 17, 2015 arrest, GELZER had the Trinidadian flag mask in his pocket.

5

19. On or about September 3, 2015, at approximately 10:30 p.m., two individuals (Witness 1 and Witness 2) observed two men running from the vicinity of the grocery store located at 180 Bay 35 Street. In sum and substance, Witness 1 described one of the men as a black male wearing dark-colored clothing with a red bandanna, and the other man as a black male, possibly in his 20s.[3] The two men entered a car, which had been parked in front of a fire hydrant, and drove away. Witness 1 described the car as a "smoke gray" colored 4-door sedan. Records from the New York State Department of Motor Vehicles revealed that GELZER owned a gray 4-door Acura TL.

The September 25, 2015 Robbery of the Flushing Avenue Deli and Grocery

20. On or about September 25, 2015, GELZER and CLARK entered the Flushing Avenue Deli and Grocery located at 63-22 Flushing Avenue in Queens. GELZER was wearing a mask and the black vest and carrying the silver gun. CLARK was wearing a mask and a hat and carrying the red gun. CLARK ran to the back of the store where he robbed one of the employees of money, credit cards, and a cellular telephone. GELZER jumped over the deli counter and pushed an employee to the floor. The robbers, using a blue string bag, stole money from the cash register. They also stole lottery tickets and MetroCards.

21. A photograph posted to the Facebook page for "Shateekk Savage" on or about October 1, 2015 included a large amount of cash and two individually wrapped MetroCards.

The October 12, 2015 Robbery of the M&M Bagel Store

---

[3] CLARK is currently 23 years old.

6

22. On or about October 12, 2015, CLARK and another individual entered the M&M Bagel Store located at 1609 Victory Boulevard in Staten Island and demanded money. CLARK carried a red handgun. The robbers used a blue string bag during the robbery.

23. On or about November 4, 2015, CLARK was arrested for Criminal Possession of Stolen Property in the Fifth Degree, in violation of New York Penal Law § 165.40, for possession of the iPhone that was stolen during the August 31, 2015 robbery described above.

24. At the time of his November 4, 2015 arrest, CLARK was in possession of a torn Victory State Bank check ("the Victory Check"). The Victory Check belonged to the M&M Bagel Store and was stolen during the October 12, 2015 robbery.

GELZER's Cellular Phones

25. Subsequent to GELZER's arrest in November 2015, law enforcement obtained search warrants for two of his cellular phones. The returns on those phones indicate, among other things, that GELZER communicated with CLARK via text message and Facebook.

26. In addition to the foregoing, based on my training and experience, I know that criminal co-conspirators commonly communicate with each other using mobile devices such as cellular phones through voice calls, text message, emails, and other means.

27. In light of (i) CLARK's use of cellular phones to communicate with GELZER (see paragraph 25); (ii) CLARK's use of cellular phones to take photographs of, among other things, himself with GELZER (see paragraph 17, n.1); (iii) CLARK's use of Facebook to post photographs that contain evidence of the charged robberies (see paragraphs 17, 21), including photographs taken with cellular phones (see paragraph 17, n.1); (iv) the fact that, as discussed below (see paragraph 29), CLARK was likely in possession of the Device approximately four months after the last robbery charged in the Superseding Indictment; and (v) my knowledge that

7

co-conspirators commonly communicate with each other using cellular phones, I submit that there is probable cause to believe that the Device contains evidence of the Subject Offenses.

## THE DEVICE

28. On January 21, 2016, the Honorable Viktor V. Pohorelsky issued an arrest warrant for CLARK in connection with the robberies described above.

29. On or about February 20, 2016, the NYPD received information that CLARK was inside a grocery store in the vicinity of 23-74 Brookhaven Avenue in Queens. After NYPD Officers arrived at the store, CLARK fled. While pursuing CLARK, an NYPD officer observed the Device on the ground, along the path where CLARK had just run. The officer subsequently recovered the Device. Based on the information set forth above, I believe that CLARK dropped the Device while running from the police.

## TECHNICAL TERMS

30. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and

8

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

31. Based on my training and experience, I know that the Device provides not only phone and text message services, but can also be used to send and receive emails; access the Internet; track GPS data; take, store and share photographs and videos; and use a wide variety of apps, such as Facebook, Twitter and many others. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

33. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the

device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

11

35. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

36. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*[signature]*

KIERAN P. KEENAGHAN
Task Force Officer
ATF

Subscribed and sworn to before me
on August 16, 2017.

*[signature]*   s/Pohorelsky

HONORABLE V
UNITED STATE

## ATTACHMENT A

The property to be searched is ONE BLACK LG CELLULAR PHONE recovered on February 20, 2016 in the vicinity of 23-74 Brookhaven Avenue in Queens, New York (the "Device"). The Device is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Sections 1951 and 924(c), from June 1, 2015 to February 20, 2016, including:

   a. any information recording CLARENCE CLARK's schedule, travel, or location;

   b. all bank records, checks, credit card bills, account information, and other financial records;

   c. any communications with CHARLES GELZER;

   d. any communications relating to firearms or the planning or commission of robberies; and

   e. any photographs depicting or relating to firearms or the planning or commission of robberies.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.